UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 1:13-cv-01453-SEB-DML ) ) |
| WE PEBBLE POINT, | ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is before the Court on Defendant WE Pebble Point, LLC's Motion to Dismiss, or in the Alternative, to Stay Proceedings [Docket No. 8], filed on November 11, 2013. For the reasons set forth below, the motion is GRANTED.

## Legal and Factual Background

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") is, as suggested by its name, an insurance company headquartered in Pennsylvania. Compl. ¶ 1. Defendant, WE Pebble Point, LLC ("Pebble Point"), is the owner and operator of the Pebble Point apartment complex located at 3030 Pebble Point Drive in Indianapolis, Indiana. *Id.* at ¶ 2. PIIC issued Pebble Point a first-party property insurance policy ("the policy") for the Pebble Point complex for the period November 22, 2011 to November 22, 2012, with the policy number PHPK795919. *Id.* at ¶ 6.[1]

The policy states that PIIC will pay for any damage caused by "covered causes of loss," which include "windstorm or hail" and "water damage." Pl.'s Resp. 6 (citing Pl.'s Exs. 1, 2). The

---

[1] Plaintiff has attached the Policy to the Complaint as Exhibits 1 and 2. We may consider this document, as well as the others attached by Plaintiff as part of the pleadings, in ruling on Defendant's motion. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

policy also specifically excludes from the covered causes of loss any loss caused by "wear and tear" or "rust, corrosion, fungus, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself." It further recites that coverage does not extend to loss caused by inadequate or defective: "design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction . . . [or] maintenance." Pl.'s Resp. 5.

The policy also contains an "appraisal clause," which specifies as follows:

2. Appraisal

If we and you disagree on the value of the property or the amount of "loss", either may make a written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and
    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Compl. ¶ 20; Pl.'s Ex. 1.

On December 2, 2012, Pebble Point submitted a claim under the policy for roof damage to the complex. According to Pebble Point's claim, the roof had suffered extensive damage on October 29, 2012, when the remnants of Hurricane Sandy passed through Indianapolis, bringing with them high winds. *Id.* at ¶¶ 7–8. Inspectors from PIIC's contractor, Cunningham Lindsey, and Pebble Point's contractor, Echo Construction, conducted an initial inspection of the damaged roofs on February 13, 2013. Pl.'s Resp. 3. PIIC then hired the Rimkus Consulting Group ("Rimkus") to conduct a further inspection. Rimkus opined that there had not, in fact, been a

2

high wind event in Indianapolis on October 29, 2012—instead, it found that the most recent such wind event occurred on December 20, 2012, after Pebble Point had filed its claim but before inspection by the insurer.[2] *Id.* On inspecting the apartment complex's roofs, Rimkus found localized damage to shingles on various roofs throughout the complex, and extensive damage only to the west-facing roof of one building. *Id.* In the report Rimkus submitted, it further opined that the majority of the damage was the result not of the storm, but construction defects like "racked installation," "improper nail placement," "long term deterioration," or other non-wind-related causes. Pl.'s Ex. C (Rimkus report). Based on the Rimkus report, PIIC obtained a damage estimate from another contractor, who calculated that the repair of the damage identified by Rimkus as storm-related would cost $16,288.56. Def.'s Br. 4. PIIC then paid Pebble Point that sum, less a $10,000 deductible. Pl.'s Resp. 4.

Pebble Point challenged Rimkus's conclusions and demanded appraisal under the contract on May 21, 2013. Compl. ¶ 23. In response, PIIC hired a second engineering firm, PT&C Forensic Consulting Services ("PT&C"), who inspected the apartment complex in July 2013. Engineer Kevin Maxwell, who had inspected on behalf of PT&C, filed a report on August 19, 2013; PIIC characterizes the second report as "generally consistent" with the first one produced by Rimkus. *See* Compl. ¶ 25; Pl.'s Ex. D (PT&C report). The report, unlike that produced by Rimkus, attributed some of the roof damage to Hurricane Sandy occurring on October 29, 2012 rather than a later high-wind event. PT&C found that approximately 130 shingles and a "ridge vent" were damaged on October 29, 2012, but it opined that the larger part

---

[2] Defendant asserts, and Plaintiff does not deny, that Pebble Point renewed its coverage for the apartment complex in a functionally identical contract with PIIC for the period November 22, 2012 to November 22, 2013. *See* Def.'s Br. 2 (citing Def.'s Ex. 1). Storm damage occurring on December 20, 2012 would thus have been covered to the same extent that storm damage on October 29, 2012 was.

3

of the roof damage was "the result of long-term degradation of the sealant strips, improper installation, improper storage of the shingle prior to installation, and/or manufacturing defects." Pl's Ex. D. When provided the PT&C report, Pebble Point again rejected its conclusions and renewed its demand for appraisal. *See* Def.'s Ex. 8.

PIIC continued to maintain that appraisal was not warranted, prompting it to file this suit on September 12, 2013, seeking a judicial declaration that the amount it had paid to Pebble Point discharged its obligation under the policy. PIIC sent Pebble Point a letter the next day informing it of the suit and explaining that PIIC did "not believe that this is a claim where appraisal is warranted." Pl.'s Resp. 9 (citing Def.'s Ex. 9).

## Legal Analysis

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the

claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to

dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

**Discussion**

PIIC seeks a declaratory judgment holding that, "in the absence of any affirmative evidence disputing the findings of the engineer, Philadelphia Indemnity Insurance Company has fully satisfied its obligations to the insured with respect to this claim." Compl. ¶ F. Further, it asks us to declare that appraisal was not warranted because the parties' dispute concerns the "scope of covered damage as opposed to merely the 'amount' of loss." *Id.* at ¶ A. For its part, Pebble Point maintains that it has a right of appraisal under the policy, and it seeks dismissal of PIIC's suit on the grounds that PIIC's refusal to accept Pebble Point's appraisal demand renders any declaratory judgment as to the amount of loss premature.

The motion to dismiss thus raises two issues: whether Pebble Point's right of appraisal under the policy applies to this type of dispute, and, if so, whether appraisal is a precondition of PIIC's declaratory judgment suit. We take up these questions in turn, and we answer both in the affirmative.

**I.  Applicability of the Appraisal Clause**

Both parties acknowledge that Pebble Point is entitled to some recovery under the policy; they disagree, however, on the amount of loss that is attributable to covered storm damage rather than excluded causes such as "wear and tear" or faulty roof installation. *See* Def.'s Br. 5 (citing Def.'s Ex. 5). PIIC contends that since disputes over *whether* loss is covered by the policy are different than those concerning only the *amount* of covered loss, Pebble Point's attempt to invoke its right of appraisal is not appropriate.

6

The Indiana courts have repeatedly affirmed the enforceability of appraisal clauses, which are a common feature of first-party insurance contracts. *See, e.g., Weidman v. Erie Ins. Grp.*, 745 N.E.2d 292, 297–299 (Ind. Ct. App. 2001). They have not spoken authoritatively, however, on the question of whether appraisal clauses may be invoked in cases involving "coverage disputes," where the primary bone of contention is the causation of loss. Noting the lack of binding state precedent, this Court recently took up the issue in *Shifrin v. Liberty Mutual Insurance,* 991 F. Supp. 2d 1022 (S.D. Ind. 2014) (citing *Travelers Prop. Cas. Co. of Am. v. Marion T, LLC*, 2010 WL 1936165, at *8 (S.D. Ind. 2010) (noting that the Indiana Supreme Court "has not spoken on the issue" of whether appraisers may consider causation)).

In concluding that a party should be entitled to invoke its appraisal rights where the insurer and insured dispute causation as well as the amount of damage, the *Shifrin* court looked to the jurisprudence of other states for guidance. In *Mapleton Processing, Inc. v. Soc'y Ins. Co.,* 2013 WL 3467190 (N.D. Iowa 2013), the Northern District of Iowa noted that the insurance policy at issue nowhere excluded coverage or causation questions from the scope of appraisal, and the court declined to read such a restriction into the contract. While acknowledging that "the courts, and not appraisers, must resolve coverage defenses and causation disputes," it reasoned that "a well-constructed appraisal . . . can resolve 'dollar amount' issues while reserving liability questions for the judge." 2013 WL 3467190, at *23. In *State Farm Lloyds v. Johnson,* 290 S.W.3d 886 (Tex. 2009), the Texas Supreme Court observed that causation issues are almost always intertwined with disputes over the amount of loss; it may be impossible for an appraiser to do his or her job without tackling and disentangling them. As the *Johnson* court explained in more detail:

> [A]ppraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a home

7

> might need. When asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. When asked to assess damage from a fender-bender, they include dents caused by the collision but not by something else. Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.

290 S.W.3d at 892–893. *See also TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 473–74 (5th Cir. 2013) ("The line between liability and damage questions may not always be clear . . . . To the extent the appraisers merely distinguished damaged caused by pre-existing conditions from damage caused by the storm, they were acting within their authority.").

We concur with the court's conclusion in *Shifrin,* and we find the reasoning it employed just as persuasive in this case. The insurance policy at issue here contains an appraisal clause that makes no mention of any exception for "causation" issues; it provides only that appraisal may be demanded if there is disagreement on the "value of the property or the amount of 'loss.'" *See* Def.'s Ex. 2 at 20. Both parties concede that there is *some* amount of loss covered by the policy, but PIIC insists that the majority of the roof damage to the apartment complex is attributable to faulty construction or maintenance, rather than storm damage. We agree with Pebble Point that it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between "storm damage" and "non-storm damage." To hold otherwise would be to say that an appraisal is never in order unless there is only one conceivable cause of damage—for example, to insist that "appraisals can never assess hail damage unless a roof is brand new." *Johnson* 290 S.W.3d at 893. *See also CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.,* 110 F. Supp. 2d 259, 263 (D. Del. 2000) (holding that if "amount of loss" does not include causation, "appraisal would be a useless exercise because it would not fix the amount of loss and either party could still contest damages"). At least where the contract

8

does not explicitly state otherwise, we conclude that the mere presence of causation or "coverage" disputes—in addition to the calculation of loss amounts that are at the core of an appraiser's competency—does not negate Pebble Point's contractual right to an appraisal. *See Shifrin,* 991 F. Supp. 2d at 1038.

PIIC responds that several decisions from courts in the Seventh Circuit buttress its position that "[a]n appraisal is not required in a coverage dispute as appraisal and coverage are two distinct issues." Pl.'s Resp. 7. PIIC hardly helps itself here, however. Its citations are, at best, an exercise in wishful legal thinking; a less generous reader might call them outright mischaracterizations.

For instance, PIIC cites *Cunningham v. State Farm Insurance Co.*, 2005 WL 3279365 (N.D. Ind. Dec. 2, 2005), a decision of the Northern District of Indiana granting summary judgment on an insured's claim that an insurer had acted in bad faith by refusing to submit what it characterized as a coverage dispute to an appraisal. 2005 WL 3279365, at *5. The *Cunningham* court, however, never decided the underlying issue: whether an insurer is correct in denying arbitration where it insists that the preponderance of the damage was "uncovered." Rather, *Cunningham* merely determined that doing so was not the kind of "conscious wrongdoing" necessary to trigger liability under the heightened standard of misconduct required for "bad faith." *See id.* (quoting *Spencer v. Bridgewater,* 757 N.E.2d 208, 212 (Ind. Ct. App. 2001)).

PIIC's reliance on *Carter v. State Farm Fire and Casualty Co.*, 850 F. Supp. 2d 946 (S.D. Ind. 2012), is even less helpful. PIIC relates that the Southern District of Indiana in *Carter* "granted summary judgment in favor of the insurer because plaintiff's claims involved coverage issues and 'therefore are not subject to appraisal under the terms and conditions of the policy of insurance.'" Pl.'s Resp. 8. This is simply untrue. The decision in *Carter* was pursuant to a

motion to remand for lack of diversity jurisdiction; the court found that the non-diverse defendants whom plaintiffs had sued on a civil conspiracy charge for insurance fraud were not fraudulently joined, and thus remand to state court for lack of jurisdiction was warranted. 850 F. Supp. 2d at 952–956. The language quoted by PIIC occurs in the court's synopsis of the facts, in which it recounts that the *state trial court* had granted defendants summary judgment on the issue of appraisal. 850 F. Supp. 2d at 949. We do not know the details of that underlying state action—nor do we know whether an Indiana court whose decisions have precedential value ever affirmed the trial court order in question.

Most puzzlingly of all, PIIC cites *Centrust Bank, N.A. v. Montpelier U.S. Insurance Co.*, 2013 WL 1855838 (N.D. Ill. May 1, 2013), for the proposition that "[a]n insurance company is able to retain the right to deny coverage of a claim post appraisal because an appraisal deals with the value of an insured property or its sustained damage, whereas coverage deals with liability as to that damage." Pl.'s Resp. 7. That is true enough, but it runs counter to PIIC's own argument. In *Centrust,* the court considered whether an appraisal clause was "illusory"—and thus unenforceable—because it provided that the insurer could still deny coverage even after the appraisal had been completed. 2013 WL 1855838, at *1. The court concluded that because appraisal is a "limited" process that is confined to fact-finding about the amount of damage, an insurer's holding in reserve the right to present legal defenses does not render the right to appraisal useless or illusory. *Id.* at *2.

*Centrust* is instructive here, but not in the sense that PIIC seems to think it is. The policy written by PIIC, like that in *Centrust*, provides that "if there is an appraisal, we will still retain our right to deny the claim." Def.'s Ex. 2 at 20. In other words, the policy expressly contemplates that the insurer may deny coverage and assert defenses—including that the damage or a portion

10

of it is outside the contractual scope of coverage—*after* an appraisal has taken place to determine the amount of loss. We find no warrant in the case law or common sense in interpreting this provision to mean that, where an insurer concedes that a covered loss has occurred, it may short-circuit the appraisal process by asserting that its estimate of the amount, and *only* its estimate of the amount, properly allocates the loss between covered and non-covered causes.

Appraisal is a "favored private procedure because it serves as an inexpensive and speedy means of settling disputes." *Shifrin,* 991 F. Supp. 2d at 1038 (quoting *Mapleton*, 2013 WL 3467190, at *20). As Magistrate Judge LaRue of this Court recently observed in ordering parties to proceed to appraisal despite the insurer's objections that there was a coverage dispute, "[e]ven if an appraisal under the policy would not resolve this case completely, it could eliminate or substantially narrow the significant issue of loss value, which might also facilitate settlement discussions." *Shree Hari Hotels, LLC v. Society Ins.*, Cause No. 1:11-cv-01324-JMS-DKL (S.D. Ind. Nov. 14, 2012). Concluding that Pebble Point may exercise its contractual appraisal right is not to endorse Pebble Point's theory of its entitlement to a larger recovery; nor is it to preemptively endorse the results of the appraiser's fact-finding as binding notwithstanding any legal defenses PIIC may assert. It is simply to honor the terms of the parties' contract—with the incidental hope that the process may better narrow and frame the facts that underlie what remain of their disputes about causation and coverage.

## II. Appraisal as a Condition Precedent to Suit

The majority of states appear to treat the satisfaction of a party's demand for appraisal, where such a right is provided in the contract, as a condition precedent to suit on the policy. *See, e.g., F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 33 (D. Mass. 1995) (Massachusetts law); *Director v. S.C. Ins. Co.*, 619 P.2d 649, 651–652 (Or. Ct. App. 1980)

(Oregon law); *Aetna Cas. & Sur. Co. v. Insurance Comm'r*, 445 A.2d 14, 16 (Md. 1982) (Maryland law). *See also* Allan D. Windt, 2 *Insurance Claims and Disputes* § 9:33 (6th ed. 2014) (collecting cases and observing that, generally, "[c]ompliance with the provision [for appraisal] is a condition precedent to bringing an action on the contract").

Again, the courts of Indiana do not speak authoritatively on this issue. The only relevant decision applying Indiana law that either party has brought to our attention is *Sketo v. Allstate Ins. Co.*, 1981 U.S. Dist. LEXIS 13338 (S.D. Ind. July 6, 1981), a non-precedential case.[3] There, the court analogized an appraisal provision—one almost identical to the appraisal clause here—to Indiana law concerning arbitration clauses in contracts. 1981 U.S. Dist. LEXIS 13338, at *2–3; *see also* Ind. Code § 34-57-2-3(d) (Indiana's codification of the Uniform Arbitration Act). Just as the Indiana Supreme Court had considered arbitration clauses to be both binding and conditions precedent to suit, so the *Sketo* court concluded that "the present condition was a valid condition precedent." *Id.* at *3–4 (citing *Vernon Ins. & Trust Co. v. Maitlen,* 63 N.E. 755 (Ind.

---

[3] In *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332 (7th Cir. 1983)—a case neither party mentions—the Seventh Circuit construed an appraisal clause under Indiana law *not* to constitute a condition precedent to suit, but we find the case distinguishable. The court in *Hayes* relied on two principles in reaching its decision. First, the canon of *contra proferentem* dictated that any ambiguity in the contract be construed against the insurer, who in *Hayes* was the party insisting on appraisal as a condition precedent. 722 F.2d at 1335 (quoting *Travelers Indem. Co. v. Armstrong*, 384 N.E.2d 607, 613 (Ind. Ct. App. 1979)). Second, the court relied on "Condition 7" of the policy, which expressly provided that the amount of loss could be determined by a court judgment; in the court's view, this negated any implication from the contract that appraisal was a necessary precondition to suit. *Id.*

Neither of the two factors relied upon by *Hayes* are present in this case. Here, the insured seeks appraisal, and would be the beneficiary rather than victim of *contra proferentem.* Moreover, the policy here never states that the *amount of loss* can be determined by court judgment. It does provide that the insurer will pay for loss in the event that the parties agree, an "appraisal award has been made," *or* "final judgment has been entered." Def.'s Ex. 2 at 22. Unlike the contract in *Hayes,* however, this does not explicitly hold out judicial determination of the amount of loss as an alternative. Rather, it merely reaffirms the unremarkable proposition that judicial final judgment may resolve legal issues not settled by the appraisal.

12

1902)).[4] While we recognize that arbitration and appraisal are not indistinguishable processes, *see Atlas Constr. Co. v. Ind. Ins. Co.*, 309 N.E.2d 810, 812–813 (Ind. Ct. App. 1974), we find the analogy drawn by *Sketo* persuasive in this regard.

A contract may provide that compliance with its fact-finding or dispute-resolution provisions is a condition precedent to suit on the contract by saying so either explicitly or implicitly. In the case of an implied condition precedent, the contract's intent "must be so plain that a contrary intention cannot be supposed." *Shahan v. Brinegar,* 390 N.E.2d 1036, 1040 (Ind. Ct. App. 1979).[5] Here, the policy's appraisal clause—under the heading of "loss conditions"—provides that, in the event of disagreement over the value of property or the amount of loss, either party has the right to demand an appraisal, whose results as to the amount of loss "will be binding." Def.'s Ex. 2 at 20. Despite reciting that the results of appraisal are binding, the policy also expressly provides that the insurer may deny the claim notwithstanding the appraisal results—presumably by interposing defenses derived from elsewhere in the contract, such as "uncovered" causes of loss. *Id.* We agree with Pebble Point that the policy, at least implicitly, conditions any suit to declare the amount of loss on the completion of this mandatory process.

---

[4] PIIC contends that *Sketo* is unpersuasive because the "most important" factor in the decision was that "the plaintiff [the losing party] did not provide a response to the motion which resulted in the court's order." Pl.'s Resp. 10. PIIC again misses the analytical mark. While the court's determination that the plaintiffs had not *complied* with the appraisal condition precedent was partially guided by the plaintiffs' failure to respond to defendant's motion to compel appraisal, the determination that appraisal was a condition precedent was an antecedent decision of law not related to plaintiff's failure to respond. *See* 1981 U.S. Dist. LEXIS 13338, at *2–3.

[5] In *Kendrick Memorial Hospital, Inc. v. Totten*, 408 N.E.2d 130 (Ind. Ct. App. 1980), the court explained further that Indiana's arbitration statutes do *not* mandate that arbitration clauses be invariably construed as conditions precedent to suit, and it noted that parties remain free to waive them. At the same, it clarified: "This is not to say that the parties by contract may not specifically provide that such provisions are irrevocable or that arbitration procedures are a condition precedent to legal action." 408 N.E.2d at 135.

*See Vernon,* 63 N.E. at 756 (concluding that, where a policy states that ascertainment of loss "shall be made by the insured and the Company, or, if they differ, then by appraisers," it implicitly made appraisal a condition precedent to suit). *Cf. Hayes,* 722 F.2d at 1335 n.6 (distinguishing *Vernon* on the grounds that policy states that there may be a judicial determination of amount of loss).

PIIC's policy makes clear that the results of an appraisal do not necessarily constitute the last word; appraisers' competence is limited to assessing the amount of loss, and not to interpreting other provisions of the policy. Where, as here, the parties dispute the amount of loss and one has demanded appraisal, however, we conclude that it is premature to consider PIIC's suit for a declaratory judgment enshrining its own estimates of the amount of covered damage. We accordingly GRANT Defendant's motion to dismiss Plaintiff's complaint for declaratory judgment, which we dismiss WITHOUT PREJUDICE, and we order the parties to proceed to the appraisal process as provided for in the policy. Plaintiff may re-file this suit within 30 days of the close of the appraisal process; if it does not, we will enter a judgment in favor of Defendant.

IT IS SO ORDERED.

Date: 9/3/2014

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Phillip N. Sanov
MERLIN LAW GROUP, P.A.
psanov@merlinlawgroup.com

Eric S. Pavlack
PAVLACK LAW LLC
eric@pavlacklawfirm.com

John Patrick Schomaker
SMITH ROLFES & SKAVDAHL CO, L.P.A.
pschomaker@smithrolfes.com