UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | 1:13-cv-01453-SEB-DML |
| vs. | ) ) | |
| WE PEBBLE POINT, LLC, | ) ) ) | |
| Defendant/Counterclaimant. | ) | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**

This cause is before the Court on Plaintiff Philadelphia Indemnity Insurance Company's ("Philadelphia Ins.") Objection [Docket No. 58] to the Magistrate Judge's Report and Recommendation ("R&R") [Docket No. 55]. For the reasons detailed below we OVERRULE the Objection and ADOPT the R&R.

**Background**

The facts of this case, which we summarize below, are undisputed by the parties.

Defendant Pebble Point, LLC ("Pebble Point") owns an apartment complex in Indianapolis, Indiana. During the relevant time period, Philadelphia Ins. issued Pebble Point two materially identical insurance policies covering certain losses at that apartment complex. In December 2012, Pebble Point made a claim against the Policy for damages

to the apartment buildings which it alleged had been caused by an October 2012 storm. It then made a second, similar claim for a later storm.[1]

After investigation, Philadelphia Ins. determined that the majority of losses claimed by Pebble Point were caused not by the storm, in which case they would have been covered, but rather by causes such as improper installation or maintenance of roofing shingles, other constructions defects, and wear and tear, none of which is covered by the Policy. As a result, Philadelphia Ins. paid Pebble Point $6,288.56—an amount equal to the damages it found to have been caused by a covered event, minus Pebble Point's $10,000 deductible. Pebble Point challenged Philadelphia Ins.'s conclusion, maintaining that its covered losses ranged in the hundreds of thousands of dollars, and it demanded that Philadelphia Ins. participate in an appraisal proceeding as outlined in the Policy.

Philadelphia Ins. declined to initiate the appraisal process, contending that the parties' dispute concerned the extent to which the claimed losses were covered by the Policy, rather than the "amount of loss" claimed. It then brought this suit seeking a declaratory judgment that it had fully satisfied its obligation under the Policy. Pebble Point filed a motion to dismiss the Complaint on grounds that it was entitled to enforce the appraisal provision of the Policy. We granted Pebble Point's motion September 3,

---

[1] For sake of simplicity, and given that neither our analysis nor our conclusion requires such distinctions, we refer to the largely identical insurance policies as "the Policy," to the back-to-back storms as "the storm," and to the corresponding claims as "the claim" throughout this Order.

2014, and ordered the parties to proceed to the appraisal process as provided in the Policy. See Dkt. 29 at 14.

> The Policy's Appraisal Provision provides the following:
>
> If we and you disagree on the value of the property of the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> 
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Dkt. 40-2 at 37. Pebble Point and Philadelphia Ins. each selected its own appraiser, Messrs. Lamont (Pebble Point) and Zwolfer (Philadelphia Ins.). Each party also filed a motion requesting the court to appoint an umpire and provided the court with the curriculum vitae of various persons the parties represented to be both neutral and competent. Dkts. 30, 31. On March 11, 2015, the court selected Mr. David J. Balistreri as the Umpire for the parties' appraisal. Dkt. 33.

In March 2015, the Umpire requested that the parties' appraisers provide him with their estimates of the damages. The Umpire also scheduled the inspection of the apartment complex for Thursday, May 28, 2015. About one month prior to the inspection, on April 22, 2015, Pebble Point's appraiser emailed to the Umpire an

engineering report dated April 15, 2015, which was prepared by Eduard Badiu of CEBB Engineering & Testing regarding Pebble Point's claimed losses.[2]

As the date of the May 28th inspection approached, weather forecasts did not look promising, and given that the appraisers and the Umpire did not want to inspect the roofs at the complex in wet weather, they sought to reschedule the inspection for a date when adverse weather conditions would not interfere. A number of emails were exchanged among them to determine a better date; of those emails, however, some went between only the Umpire and the Philadelphia Ins. Appraiser. Indeed, the Pebble Point Appraiser discovered that he had been excluded from those communications only in a subsequent email that had been forwarded to him by the Umpire in which the Umpire informed both appraisers that he would decide on May 26, 2015 whether the inspection would go forward as scheduled on May 28, 2015.

In the ten-day period leading up to the scheduled inspection, various emails were exchanged between the appraisers and the Umpire relating to the scope of information the Umpire would consider in making his decision. In the first email, dated May 19, 2015, the Umpire, after describing the information he had received from the appraisers, requested confirmation of the expected scope of information, including any expected

---

[2] It appears from the record that, at some point, the Umpire was also provided with an engineering report that Rimkus Consulting Group, Inc. had prepared on behalf of Philadelphia Ins. Apparently, the appraisers and the Umpire discussed this report at the May 2015 inspection, but none of the parties' submissions indicates when or how the Umpire received this Rimkus report.

testimony that the appraisers intended to offer at the inspection. This email states in relevant part:

> Do I have all reports/documents you will be submitting for review? I believe I have adjuster reports (one from each side) and an engineer report from [Pebble Point's Appraiser]. Also – are there any persons other than yourselves who will provide testimony/opinions regarding this matter? If so please identify them. I do not accept last minute submission at the site. I hope to be able to settle this the day of our site visit but have allowed some time on Friday [May 29th] if additional paperwork is required.

Dkt. 39-1 at ¶ 5. Pebble Point's Appraiser responded that his engineer would be attending the site visit and inspection. *Id.* at ¶ 6.

On May 26, 2015, the Umpire replied to both appraisers, stating:

> If you intend to have your engineer testify to anything on the date of our site visit please identify him, what his testimony will regard, and distribute any reports he may have written <u>to the entire appraisal panel</u> before the end of the day today. Please be certain [the Philadelphia Ins. Appraiser] and I have a complete copy to review prior to our site visit.
>
> I assume your engineer is Badiu, has written and will testify regarding his report (dated 4/15/2015), which has 39 pages in total. This is the report I have which you sent me earlier.
>
> I will not accept any documents for consideration after today that have not been previously shared with the entire panel.

*Id.* at ¶ 7 (emphasis in original).

The Pebble Point Appraiser's office responded that same day with an email to both the Umpire and the Philadelphia Ins. Appraiser which included a Drop Box link to a folder containing his engineer's previously-submitted, thirty-nine page report as well as additional photographs taken by the engineer but not included in his original report. *Id.* at ¶¶ 8–9.

The Umpire responded:

> The stuff in the drop box is too much to download, print, review and make sense of prior to our site visit.
>
> I asked for all this stuff a long time ago and as there is little time at this late hour I am rejecting its admission.

*Id.* at ¶ 9.

On the day of the inspection, the Umpire confirmed that in making his decision he would not consider Pebble Point's engineering report and that he would not permit Pebble Point's engineer to testify regarding his report, stating that its exclusion was due to its "late submission." *Id.* at ¶ 10. Thus, although Mr. Badui was at the site visit with the appraisers and the Umpire, he was not permitted to provide any input regarding the inspection.

During the site visit on May 28, 2015, the Pebble Point Appraiser apparently noticed a social familiarity between the Philadelphia Ins. Appraiser and the Umpire. According to him, he confronted the two and asked "about full disclosure of the working relationship between [them]" and, in response, "they each shrugged their shoulders and

walked away." *Id.* at ¶ 12. The Umpire and the Philadelphia Ins. Appraiser maintain that, when confronted, they told the Pebble Point Appraiser that the Umpire "had served as an engineer on one or two of [the Philadelphia Appraiser's] prior claims." Zwolfer Aff. ¶¶ 13–14. To date, the full extent of their prior working relationship has not been conveyed to the court.

The parties also dispute the thoroughness of the inspection itself. It is undisputed that the appraisers and the Umpire conducted physical inspections of only some of the twenty-two allegedly damaged roofs and did not inspect the interior portions of any of the buildings.[3] Pebble Point and its appraiser contend that the Umpire should have inspected all twenty-two damaged roofs, given that the roofs had varying degrees of damage, faced different directions, were of different ages, and had different roof coverings. They contend further that the Umpire "refused" to conduct inspections of the buildings' interiors despite knowing that Pebble Point was claiming losses to the interior portions of the common areas and the individual apartments. Philadelphia Ins.'s Appraiser, meanwhile, maintains that all three men agreed during the site visit that they would inspect only a "sampling" of the alleged damages to the roofs, and that Pebble Point's Appraiser never requested that the Umpire examine any interior damage to the buildings.

On June 8, 2015, the Umpire sent an email to both appraisers containing his Appraisal Award in which he awarded Pebble Point $37,179.09 for loss replacement

---

[3] The court has been provided with no evidence detailing which, or how many, of the twenty-two roofs were actually physically inspected.

costs or $29,743.27 for loss in actual cash value, less any applicable deductible or previous payment on the claim. Dkt. 41-1. Pursuant to the Policy, the Appraisal Award became binding on June 9, 2015, when the Philadelphia Ins. Appraiser signed the Award, signifying his agreement.[4] *Id.*

On June 14, 2015, the Pebble Point Appraiser emailed the Umpire (with a copy to the Philadelphia Ins. Appraiser), with the following request:

> So that I may provide an explanation to my client, can you please advise me as to why you chose not to allow my client[']s engineering report to be submitted as well as why you did not allow my client[']s expert to testify at the appraisal hearing[?]

Dkt. 41-4 at 1. The Umpire responded:

> I set the award based on the testimony of both appraisers, all reports submitted, and my visual examination of the site.
>
> You did not provide ample notification for the other side to have their own expert present even though I asked for notification ten days prior to our inspection. I did, however, consider his report.

*Id.*[5]

---

[4] Pursuant to the Policy, the Award becomes binding when any two members of the three-member panel agree on its terms.

[5] The court has not been informed of any prior deadlines set by the Umpire during the appraisal process related to the disclosure of expert testimony which were not satisfied by Pebble Point. Presumably, the Umpire is referring to the same-day deadline set by him in his May 19, 2015 email, which, contrary to his subsequent email, was met by Pebble Point.

On June 29, 2015, Pebble Point filed a Motion to Set Aside the Appraisal Award, contending that the Appraisal Award was "tainted with collusion and partiality." Dkt. 39-1 at ¶ 11. On August 7, 2015, pursuant to 28 U.S.C. § 636(b)(1)(B) we designated Magistrate Judge Debra McVicker Lynch of our court to issue a proposed report and recommendation regarding Pebble Point's motion to set aside. Dkt. 45. On January 28, 2016, Magistrate Judge Lynch issued her R&R recommending that the Award bet set aside due to a tainted appraisal process and that the parties' insurance dispute be litigated in this court. Dkt. 55. On February 12, 2016, Philadelphia Ins., pursuant to Federal Rule of Civil Procedure 72, filed its Objection to the Magistrate Judge's R&R, contending that the evidence did not support her conclusions. Dkt. 58.

## Legal Standard

A district court reviewing a magistrate judge's decision on non-dispositive issues may modify or set aside that decision if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Rule 72(a) provides, in pertinent part, that the district judge in the case must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1983); *see also Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

With respect to dispositive matters, Rule 72(b) requires a party who disagrees with a magistrate judge's report and recommendation on a dispositive motion to file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). The district court then determines, *de novo*, "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Remy Inc. v. Tecnomatic, S.P.A.*, 2013 WL 1311095, at *1 (S.D. Ind. Mar. 26, 2013).

## Analysis

Philadelphia Insurance's Objection to the Magistrate Judge's Report & Recommendation is narrow. For the most part, it does not dispute the factual sequence of events leading up to and occurring during and after the inspection and appraisal process, nor does it dispute any fact relating to the subsequent issuance of the Appraisal Award that Pebble Point now seeks to set aside.[6] In addition, both parties agree that the case relied upon by the Magistrate Judge in reaching her conclusion, *Atlas Construction Co. v. Indiana Insurance Co.*, 309 N.E.2d 810 (Ind. Ct. App. 1974), is controlling in this matter.

In interposing its objection to the R&R, Philadelphia Ins. argues simply that the evidence relied upon by the Magistrate Judge was insufficient to support her finding of

---

[6] We note also that Philadelphia Ins. has not raised an objection to the Magistrate Judge's recommendation that this case be litigated in this Court as opposed to remanded for a new appraisal process. Accordingly, we hereby ADOPT that portion of the R&R.

fraud, mistake, or misfeasance, which is required to set aside an award. We are unpersuaded by this argument.

Under *Atlas* and its progeny, an appraisal award may be set aside upon a showing of fraud, collusion, misfeasance, bias, or some similar exceptional circumstance of manifest injustice. *See e.g., Atlas*, 309 N.E.2d at 812 ("The Courts of Indiana will not hesitate to set aside an appraisal award if it is tainted with fraud, collusion, or partiality…."); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 875 (7th Cir. 2000) ("[U]nder Indiana law, an appraisal award is binding unless it can be shown that the appraisal is infected with unfairness or injustice."); *FDL, Inc. v. Cincinnati Ins. Co.*, 135 F.3d 503, 505 (7th Cir. 1998) ("Exceptional circumstances [for setting aside an appraisal award] include manifest injustice, fraud, collusion, misfeasance or the like.").

As explained in her well-reasoned R&R, Magistrate Judge Lynch concluded that the evidence in this case supported a finding of bias and partiality on the part of Philadelphia Ins. such that it tainted the appraisal process and warranted setting aside the Award. We agree with the Magistrate Judge's conclusion based in particular on the following salient factual findings:

- **Previously Undisclosed relationship:** It remains undisputed that the Umpire who was proposed to the court by Philadelphia Ins. as a neutral and competent candidate for the Appraisal Panel had a prior working relationship with the Philadelphia Ins. Appraiser who was also assigned to the Panel. This relationship was not disclosed to the court nor to Pebble Point and its appraiser until, and only after, the Pebble Point Appraiser perceived a familiarity between the two during the site visit and inspection on May 28, 2015.

- **Ex Parte Emails:** Certain emails regarding the scheduling of the site visit and inspection were exchanged between only the Philadelphia Ins. Appraiser and the Umpire and were not disclosed to the Pebble Point Appraiser until three days prior to the May 28, 2015 inspection.

- **Exclusion of Pebble Point Expert Report & Testimony:** Despite the need for engineering expertise regarding the causation of the claimed losses in this case (as Philadelphia Ins. itself stressed before this court), the Umpire refused to admit Pebble Point's engineering report or to allow its engineer, who was in attendance at the site visit, to offer any input or testimony regarding the damage to the buildings. When pushed for an explanation by Pebble Point's Appraiser after the Award had been issued, the Umpire stated that he had rejected its admission because it was "late." However, it appears from the record that the Umpire was originally provided the report more than one month prior to the site visit and inspection. Then, ten days prior to the site visit, the Umpire acknowledged that he had received the report and inquired as to whether the parties anticipated presenting testimony or opinions regarding the claim. When Pebble Point responded that it planned to present its engineer's testimony, the Umpire set a same-day deadline for Pebble Point to provide the entire Panel with copies of his report and expected testimony, signaling once again that he was already in possession of Mr. Badui's 39-page report, dated April 15, 2015. Pebble Point's Appraiser complied with the same-day deadline set by the Umpire by providing the Philadelphia Ins. Appraiser and the Umpire with a Drop Box link to a folder containing the 39-page engineering report along with additional photos of the damaged buildings. Nonetheless, the Umpire rejected its admission, stating that the materials were "too much" for him to review prior to the site visit which was set to occur ten days later, even though he had previously acknowledged having possession of the very same report for approximately one month.

- **Insufficiency of Site Inspection:** It is undisputed that the Umpire, although having full knowledge of the scope and details of Pebble Point's claimed losses, declined to inspect all of the allegedly damaged roofs and any of the buildings' interiors during the site visit.

- **Awarded Amount:** The awarded amount of $37,179.09, less the $10,000 deductible and $6,288,56 already paid on the claim, was significantly less than the $562,000 in losses claimed by Pebble Point.

While no single fact necessarily establishes the existence of fraud, collusion, or bias in this case, we find that the cumulative effect of all the evidence before us is sufficient to prove misfeasance, partiality, and arbitrariness in the appraisal process and thus warrants setting aside the Appraisal Award. Accordingly, we <u>OVERRULE</u> Philadelphia Insurance's Objection [Docket No. 58] and <u>ADOPT</u> the Magistrate Judge's Report and Recommendation [Docket No. 55].

IT IS SO ORDERED.

Date: 11/18/2016

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick C. McGinnis
MERLIN LAW GROUP
pmcginnis@merlinlawgroup.com

Phillip N. Sanov
MERLIN LAW GROUP, P.A.
psanov@merlinlawgroup.com

Eric S. Pavlack
PAVLACK LAW LLC
eric@pavlacklawfirm.com

Colin E. Flora
PAVLACK LAW, LLC
Colin@PavlackLawFirm.com

John Patrick Schomaker
SMITH ROLFES & SKAVDAHL CO, L.P.A.
pschomaker@smithrolfes.com